IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.    13-cv-01425-WYD-MJW

CONTINENTAL WESTERN INSURANCE COMPANY, An Iowa corporation,

    Plaintiff,

v.

COLONY INSURANCE COMPANY, a Virginia corporation,

    Defendant.

---

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on cross motions for summary judgment. Plaintiff Continental Western Insurance Co. ("Continental") filed its Motion for Summary Judgment (ECF No. 21) on January 27, 2014.   Defendant Colony Insurance Co. ("Colony") filed its Cross Motion for Summary Judgment (ECF No. 23) on February 18, 2014.   A hearing was held on these motions on August 6, 2014.

By way of background, this suit stems from the multi-state listeria outbreak of September 2011, in which approximately 32 people died from ingesting contaminated cantaloupes that originated from Jensen Farms in Holly, Colorado.   In the wake of numerous personal injury and wrongful death lawsuits, Jensen Farms filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Colorado on May 25, 2012.   The Bankruptcy Court created a process through which claimants and other responsible parties who were not parties to the bankruptcy proceedings could settle

claims ("Claim Resolution Process").   It is through this process that the current action arises.

Governmental investigations of the listeria outbreak revealed that Pepper Equipment Corporation ("Pepper") sold refurbished processing equipment to Jensen Farms to process cantaloupes.   The equipment was originally used to process potatoes, but was manipulated by Pepper in a fashion that would make it suitable to process cantaloupe.   The Food and Drug Administration issued a report stating that the processing equipment sold by Pepper "most likely contributed" to the spread of listeria on the Jensen Farm cantaloupes.   Thus, Pepper became implicated in the listeria outbreak. Regarding Pepper's commercial general liability ("CGL") policies, Continental insured Pepper from September 14, 2010 to September 14, 2011, and Colony insured Pepper under a successive policy from September 14, 2011 to September 14, 2012.

Participation by potentially liable parties was conditioned on such parties' insurers disbursing funds into a "pool" called the Bodily Injury Non-Debtors Claims Fund.   ECF No. 21-19, p. 11, § 1.5.   These funds would be used to pay and settle claims asserted by the listeria claimants.   The parties were also required to pay into an Administrative Fund which provided Jensen Farms money to handle administrative costs, *e.g.*, notice, advertising, claims handling, and legal expenses.   Continental chose to participate in the Claim Resolution Process, but Colony did not.   In doing so, Continental agreed to completely defend Pepper even though only a portion of the claims for bodily injury and wrongful death asserted by the listeria claimants against Pepper fell under Continental's coverage period.   The remaining portion of the claims that Continental defended fell under Colony's coverage period.

On February 28, 2012, William Marler, the listeria claimants' lawyer, mailed a letter to Pepper's defense counsel, John Grund, stating that its CGL policies with Continental and Colony were at issue regarding listeria claimants' injuries. ECF No. 21-7. On March 2, 2012, Pepper's defense counsel mailed a letter to both Continental and Colony requesting a statement regarding each insurer's position as to coverage regarding listeria claimants. ECF No. 21-3. The March 2, 2012 letter also advised the insurers that the parties were asked to participate in the Claim Resolution Process as a potential forum to settle claims and stated that Pepper had been named in two recent Colorado lawsuits involving listeria claimants. *Id.* On April 27, 2012, Continental sent a letter to Pepper concerning the proposed settlement of listeria related claims against Pepper in the impending bankruptcy action against Jensen Farms. ECF No. 21-13. The letter outlined the essential terms of the contemplated settlement framework as between Pepper and Continental. *Id.*

On March 5, 2013, Continental's counsel sent a letter to Colony stating that Continental would participate in the Claim Resolution Process. ECF No. 21-16. The letter included a statement acknowledging that Colony declined to participate "even though [Colony] also provided CGL coverage for Pepper and that coverage is implicated by at least some of the listeria claims that are or will be resolved in the course of [the] global settlement process." *Id.* Continental further stated that it had already incurred defense costs and indemnity payments and expected future costs to accrue and "reserve[d] all rights to pursue Colony under any theory, legal or equitable, including by way of assignment of rights and claims from Pepper Equipment, in order to recover what Colony owes for defense and settlement but has refused to pay in whole or in part." *Id.*

On March 27, 2013, Colony responded by letter and explained that it was under no obligation to reimburse Continental.  ECF No. 21-17.  In pertinent part, the letter reads:

> This so called global settlement only involves the plaintiff firms that have agreed to participate.  The defense costs inclusive of administrative costs incurred and the indemnity commitments made by [Continental] have been made by [Continental] as a volunteer.  Colony . . . has no obligation to reimburse [Continental] for any of its costs.

*Id.*

As a participant in the Claim Resolution Process, Continental agreed to pay $1.3 million into the Bodily Injury Non-Debtors Claims Fund and $50,000 into the Administrative Fund.  ECF No. 21, p. 12, ¶ 51.  The Claim Resolution Process enabled Pepper to settle over 60 claims, 31 of which involved wrongful death.  ECF No. 21-27, p. 9, ¶ 40.  Moreover, Pepper and its insurers were tendered releases from each listeria claimant upon settlement.  *Id.*

On June 3, 2013, Continental filed this lawsuit against Colony requesting a declaratory judgment regarding the parties' rights and duties as they relate to defending Pepper and equitable contribution from Colony for costs incurred in the Claim Resolution Process.  ECF No. 1.  On January 27, 2014, Continental filed a Motion for Summary Judgment arguing that Colony breached its duty to defend Pepper by not participating in the Claim Resolution Process, and that Continental is entitled to equitable contribution for paying out claims that were covered under the successive policies.  ECF No. 21.  On February 18, 2014, Colony filed a Cross Motion for Summary Judgment arguing that Continental has no right to settle claims covered only by the Colony policy and then seek reimbursement, and that Continental's claims are barred by provisions in the Colony

policy, including the Consent to Settle Clause.  ECF No. 23.  For the reasons stated below, Continental's Motion for Summary Judgment is granted and Colony's Cross Motion for Summary Judgment is denied.

II.     ANALYSIS

   A.     Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit."  *E.E.O.C. v. Horizon/ CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1190.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  When applying the summary judgment standard, the court must "'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'"  *Id.* (quotation omitted).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B.     Cross Motions for Summary Judgment

Continental's Complaint for Declaratory Judgment, Contribution and/or Reimbursement, and Other Relief, filed June 6, 2013, designates two claims for relief: (1) a declaratory judgment determining the rights and obligations of the parties under the policies; namely, whether Colony had an obligation to defend, and (2) contribution and/or reimbursement for the costs incurred through Continental's participation in the Claim Resolution Process.

On January 27, 2014, Continental filed a motion for summary judgment arguing that Colony breached its obligation to defend and that Continental is entitled to equitable contribution.  On February 18, 2014, Colony filed a cross motion for summary judgment arguing that Continental has no right to settle claims covered only by the Colony policy and then seek reimbursement, and that Continental's claims are barred by provisions in the Colony policy, to include the Consent to Settle Clause.

1.     Obligation to Defend

In order to determine the rights and obligations of the parties under the policies, I first look to whether Colony breached its duty to defend, which is a point of contention in this case.  Thus, I address in turn whether Colony had a duty to defend Pepper and whether Colony breached that duty.

a.     Whether Colony had a Duty to Defend

"Whether there is a duty to defend is a question of law."  *Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639 (Colo. App. 2007).  A duty to defend "is determined by an examination of the allegations in the underlying complaint against the insured." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo. 1999).  "The duty to

defend pertains to the insurance company's duty to affirmatively defend its insured against pending claims." *Constitution Assocs. v. New Hampshire Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).  "The duty to defend is triggered more easily than is the duty to indemnify."  *Id.*  "The duty to indemnify relates to the company's duty to satisfy a judgment entered against the insured."  *Id.*

"Generally, the duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage, but the duty to indemnify does not arise unless the policy *actually* covers the alleged harm."  *Constitution Assocs.*, 930 P.2d at 563; *see also Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo.1991).  "The insurer has a duty to defend unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy."  *Hecla Mining Co*, 811 P.2d at 1090.  It is appropriate for an insurer believing that it has no duty to defend, "to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated."  *Id.* at 1089.

The Colorado Supreme Court "has set a high standard for an insurance company seeking to avoid its duty to defend".  *Compass Ins. Co.*, 984 P.2d at 613.  Quoting *Hecla Mining Co*, 811 P.2d at 1089, it stated in the *Compass* decision:

> [a]n insurer seeking to avoid its duty to defend an insured bears a heavy burden.  An insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy. 'The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend.' Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy.

- 7 -

> '[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.'

*Id*. at 613-14.  In other words, the duty to defend exists "unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Hecla Mining Co.*, 811 P.2d at 1090.

"The determination of a duty to defend . . . depends on the terms of the insurance policy, and the interpretation of those terms based upon the principles of contract interpretation." *Hecla Mining Co.*, 811 P.2d at 1090. Where, as here, federal jurisdiction is predicated upon diversity, the court applies the substantive law of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). Pursuant to Colorado law, "[a]n insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003). "In undertaking the interpretation of an insurance contract, courts should be wary of rewriting provisions, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy." *Id.* "Courts should read the provisions of the policy as a whole, rather than reading them in isolation." *Id*. The Colorado Supreme Court has cautioned that:

> Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage. However, because of the unique nature of insurance contracts and the relationship between the insurer and insured, courts do construe ambiguous provisions against the insurer and in favor of providing coverage to the insured.

*Id.* "A court's interpretation of an insurance contract is a matter of law subject to de novo review." *Id.*

Concerning its duty to defend, Colony's policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> \*   \*   \*
>
> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period . . . .

ECF No. 21-1, p. 7, §§ 1(a) and 1(b). Thus, the question is whether such duty existed under these specific circumstances.

Turning to my analysis, in determining whether Colony had a duty to defend, I would ordinarily look no further than the underlying complaint under Colorado's complaint rule. However, in this instance I am concerned with allegations against Pepper set forth in "proofs of claim" forms from the bankruptcy proceeding's Claim Resolution Process. The proofs of claim forms were completed by each listeria claimant per the bankruptcy judge's order and lay out each claimant's allegation, including their onset date of illness, against Pepper. The onset date of illness is useful in determining whether Continental's or Colony's coverage period was implicated.

As to the issue of whether allegations from parallel judicial proceedings can be utilized in the determination of a duty to defend, the Tenth Circuit in a case styled *Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188 (10th Cir. 2010), provides telling guidance.   In *Apartment Inv. & Mgmt. Co. (AIMCO)*, the court indicated that the Colorado Supreme Court would likely recognize an exception to the complaint rule if confronted with the issue of "whether an insurer can ignore facts alleged in parallel judicial proceedings of which it is aware at the time it refuses to defend an insured and that give rise to a duty to defend."   593 F.3d at 1194.   As to this issue, the court opined that "the Colorado Supreme Court would approve of an exception to the complaint rule requiring an insurer to consider the allegations in parallel judicial proceedings, of which it is aware, arising from a common core of operative facts."   *Id.* at 1195.

Likewise, I find that a similar exception to the complaint rule applies here.   Thus, I look to the proofs of claim forms produced in the Claim Resolution Process, just as I would ordinarily look to the underlying complaint under Colorado's complaint rule.   *See also Compass Ins. Co.*, 984 P.2d at 615 (Potential Responsible Party ("PRP") "letters are the functional equivalent of the complaint in the underlying action against the insured[s], . . . and we must examine the allegations contained in the PRP letters in order to decide whether Insurers may avoid their duty to defend.").   In the context of the bankruptcy proceeding's Claim Resolution Process, the proofs of claim forms lay out each claimant's allegation against Pepper and serve as the functional equivalent to the complaint in the underlying action.

Colony's insurance policy provides that it has a duty to defend only if claims fall within its coverage from September 14, 2011 to September 14, 2012.   Upon reviewing

the two proofs of claim forms that were included as an exhibit, it is evident that allegations with illness onset dates after September 14, 2011 exist against Pepper that potentially or arguably fell within Colony's coverage.  ECF Nos. 43-1, 43-2.  Further, on March 2, 2012, Colony was put on notice that Pepper was implicated in the listeria outbreak in a letter from Pepper's defense counsel.  ECF No. 21-3.  The letter also requested Colony's position as to coverage regarding listeria claimants and advised Colony that the parties were asked to participate in the Claim Resolution Process as a potential forum to settle claims.  *Id.*

Irrespective of Pepper's actual liability to the listeria claimants, Colony had a duty to affirmatively defend Pepper under the circumstances.  As justification, recall that the duty "to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy."  *Compass Ins. Co.*, 984 P.2d at 613.  When the duty to defend is not obvious "from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."  *Id.* at 613-14.  Further, it is appropriate for an insurer believing that it has no duty to defend, "to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated."  *Hecla Mining Co*, 811 P.2d at 1089.

Since the allegations in the proofs of claim forms stated claims that potentially or arguably fell within Colony's coverage, Colony inherited a duty to defend the claims.

Thus, I am satisfied that the allegations included within the proofs of claim forms are sufficient evidence to show that at least some claims in the Claim Resolution Process potentially or arguably fell under Colony's policy. Accordingly, I find that Colony had a duty to defend Pepper.[1]

### b. Whether Colony Breached its Duty to Defend

Turning to whether Colony breached its duty to defend. Colony asserts that the claims were settled in violation of its Consent to Settle Clause and that Pepper breached prior to Colony's alleged breach of its duty to defend. Pursuant to the Clause, "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." ECF No. 21-2, p. 15. Colony states that pursuant to Continental's April 27, 2012 letter to Pepper, Continental and Pepper "settled" claims before Jensen Farms filed for bankruptcy on May 25, 2012 and, therefore, Pepper breached the policy before Colony allegedly breached its duty to defend. ECF No. 23-1, pp. 41-42.

I disagree with Colony. First, Continental's April 27, 2102 letter to Pepper

---

[1] Though not stated in the allegations, and thus not dispositive of my findings as to whether Colony had a duty to defend, I note that Continental's deposition of Donna Biondich, Colony's corporate representative and Senior Vice President, is telling in that she attests to Colony's duty to defend. In her deposition, Biondich admitted that at least some of the claims in the Claims Resolution Process fell within Colony's policy period with Pepper. ECF No. 21-26, p. 8, 32:24-32:25; p. 9, 33:1-33:6; p. 18, 69:10-69:17; p. 25, 99:2-99:14; p. 26, 103:3-103:10; p.26, 104:1-104:3. For instance, Continental asked Biondich, "[w]ell, do you know how many of the claimants in the Jensen bankruptcy that also asserted claims against Pepper actually had a first-onset-of-symptom date in the Colony policy period?" *Id.* at p. 26, 103:3-103:7. Biondich answered, "[o]ff the top of my head, I don't recall the exact number, but there were a handful or so, if I recall." *Id.* at p. 26, 103:8-103:10. Biondich later clarified her answer to state that around eight claims in the Claim Resolution Process had first onset of symptom dates in Colony's policy period. *Id.* at p. 26, 104:1-104:3. Continental also asked Biondich, "it's your belief that there weren't any lawsuits involving Pepper that Colony was defending that ended up going into the Jensen bankruptcy and getting resolved there?" *Id.* at p. 25, 99:2-99:6. Biondich responded, "[w]e know there were some . . . " *Id.* at p. 25, 99:9.

explains the "proposed" terms of the Claims Resolution Process, *i.e.*, the terms were not final because Jensen Farms had not filed for bankruptcy yet.  ECF No. 21-13. Settlement could not be effectuated until the bankruptcy court approved the Claim Resolution Process and approved the settlements.  Thus, no claims were "settled" on April 27, 2012.  Second, Colony was put on notice on March 2, 2012 that Pepper was implicated in the listeria outbreak.  On February 28, 2012, William Marler, the listeria claimants' lawyer, mailed a letter to Pepper stating that its CGL policies with Continental and Colony were at issue regarding listeria claimants' injuries.  ECF No. 21-7.  On March 2, 2012, Pepper's defense counsel mailed a letter to both Continental and Colony requesting a statement regarding each insurer's position as to coverage regarding listeria claimants.  ECF No. 21-3.  The March 2, 2012 letter also advised the insurers that the parties were asked to participate in the Claim Resolution Process as a potential forum to settle claims and stated that Pepper had been named in two recent Colorado lawsuits involving listeria claimants.  *Id.*

Colony's awareness of allegations potentially falling within its coverage period, together with its inaction, indicates that Colony's conduct was improper despite its assertion that the claims were settled in violation of its policy.  As alluded to in the preceding case law, an insurer must accept the defense of a claim when the duty to defend is uncertain and the allegations potentially or arguably fall within policy coverage. *Compass Ins. Co.*, 984 P.2d at 613-14.  A contrary rule could potentially preclude an insured from receiving a defense that is prompt and proper.  *D.R. Horton, Inc.-Denver v. Travelers Indemnity Co. of America,* No. 10-CV-02826-WJM-KMT, 2012 WL 5363370, at *9 (D. Colo. Oct. 31, 2012) (citing *Newmont USA Ltd. v. Am. Home Assur. Co.*, 676 F.

Supp. 2d 1146, 1158 (E.D. Wash. 2009)).

For these reasons, I find that Colony breached its duty to defend resulting from its inaction under the circumstances.

### 2. Equitable Contribution

Having determined that Colony breached its duty to defend, the next issue is whether Continental is entitled to equitable contribution.

#### a. Analysis

Equitable contribution is recognized under Colorado law and is "a means of apportioning a loss between two or more insurers who cover the same risk so that each insurer pays its fair share of the common obligation." *Allstate Ins. Co. v. W. Am. Ins. Co.*, No. 09-CV-00967-RBJ-MJW, 2011 WL 11065655, at *3 (D. Colo. Nov. 21, 2011). On this issue, the parties disagree as to whether a participating insurer is entitled to equitable contribution from a non-participating insurer when the former provides a complete defense to an insured against a common risk arising throughout the successive coverage periods of both insurers. Continental argues that it is entitled to equitable contribution because Colony breached its duty to defend Pepper in the Claim Resolution Process. Colony argues that equitable contribution is inapposite under this specific set of facts. It asserts that Continental settled claims in violation of Colony's policy and that Continental lacks standing to request equitable contribution.

Whether equitable contribution is available to a liability insurer who provides a complete defense to claims, *i.e.*, a common risk, that partially fall within the successive coverage period of another insurer has been collectively addressed by state and federal courts in Colorado and in various other jurisdictions. The Colorado Supreme Court's

decision in *Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.*, 833 P.2d 741 (Colo. 1992) allowed an insurer who voluntarily defended the city, *i.e.*, the claims asserted against the city did not fall under the insurer's policy, to receive contribution from a co-insurer who breached its duty to defend.   In analyzing whether the insurer at issue had a right to seek reimbursement for costs incurred in effecting the settlement, the Colorado Supreme Court stated that "the majority of courts that have decided this issue permit an insurer that voluntarily pays more than its share of a loss to demand contribution from a second insurer."   *Id.* at 747.   Thus, the court held that the insurer at issue was entitled to pro rata contribution from a second insurer for defense costs and settlement payment.   *Id.* at 748.

In this court, U.S. District Judge William Martinez in a case styled *D.R. Horton, Inc.-Denver v. Travelers Indemnity Co. of America,* No. 10-CV-02826-WJM-KMT, 2012 WL 5363370 (D. Colo. Oct. 31, 2012), discussed whether an insurer's obligation to provide a defense is joint and several where multiple insurers have a duty to defend. *D.R. Horton, Inc.-Denver*, involved a dispute between primary and excess insurers in a construction defect case.   In analyzing the issue before him, Judge Martinez explained his opinion on how the Colorado Supreme Court would rule and concluded that each liability insurer has a duty to provide a complete defense.   *D.R. Horton, Inc.-Denver*, 2012 WL 5363370, at *8.   Judge Martinez stated:

> [I]f the Colorado Supreme Court were to address the issue [of whether an insurer's obligation to provide a defense is joint and several where other insurers also have a duty to defend], it would hold that each liability insurer has a duty to provide a complete defense, such that a liability insurer who breaches this duty can be found liable for the entire amount of defense fees and costs (and that insurer can then seek equitable contribution from any co-insurers).

*Id.*

Judge Martinez next acknowledged that his conclusion is also the majority view in other jurisdictions and cited examples, including a case involving successive policy periods. *D.R. Horton, Inc.-Denver*, 2012 WL 5363370, at *9. Judge Martinez further stated:

> This is the majority view in other jurisdictions. *See, e.g.*, *U.S. Fid. & Guar. Co. v. Cont'l Ins. Co.*, Nos. CV-04-29-BLG-RFC, CV-08-29-BLG-RFC, 2010 WL 4102250, at *2 (D. Mont. Oct. 18, 2010) ("[A] majority [of jurisdictions] hold that when multiple insurers with successive policy periods have a duty to defend, each insurer is severally liable to the insured for the entire cost of the defense."); . . . *Nutmeg Ins. Co. v. Employers Ins. Co. of Wausau*, No. Civ.A. 3:04-CV-1762B, 2006 WL 453235, at *14 (N.D. Tex. Feb. 24, 2006) ("The insurer has a duty to defend its insured, not a duty to provide a pro rata defense. When a claim falls partially within and partially outside of a coverage period, the liability insurer's duty is to provide its insured with a complete defense . . . .") (citation omitted); *Newmont USA Ltd. v. Am. Home Assur. Co.*, 676 F. Supp. 2d 1146, 1158 (E.D. Wash. 2009) ("[A]n insured is entitled to a full and complete defense from every insurer having a duty to defend. . . . Any contrary rule would encourage foot dragging by insurers and potentially leave the insured without a prompt and proper defense.").

*Id.*

Finally, Judge Martinez identified that the Tenth Circuit, in *Signature Development Companies, Inc. v. Royal Ins. Co. of America*, 230 F.3d 1215, 1220 (10th Cir. 2000), has also suggested that an insured is entitled to a complete defense from each insurer that has a duty to defend. Judge Martinez added:

> In *Signature Development Companies, Inc. v. Royal Insurance Company of America*, the Court found that Royal Insurance Company had breached its duty to defend, despite the existence of other liability insurers, because Royal's actions '[did] not amount to an active **independent** defense of [the underlying claims]. . . . [T]he fortuitous existence of another insurer who was willing to meet its own obligations did not excuse Royal from discharging its duty to defend. . . . [T]he district court's [ultimate] noncoverage ruling did not excuse Royal from **fully** defending the claims in the first instance.'

*D.R. Horton, Inc.-Denver*, 2012 WL 5363370, at *9 n.6.

Turning to my findings, recall that Continental and Colony successively insured Pepper during the 2011 listeria outbreak that triggered the defense of claims during both policy periods. Continental's coverage ran from September 14, 2010 to September 14, 2011 and Colony's coverage ran from September 14, 2011 to September 14, 2012. Further, as previously discussed, Colony breached its duty to defend Pepper through its inaction. Based on my analysis of the foregoing case law, I find it persuasive on the issue of whether Continental had a duty to provide a complete defense to Pepper. Thus, I find that a participating insurer is entitled to equitable contribution from a non-participating insurer, both having a duty to defend, when the former provides a complete defense to an insured against a common risk, *e.g.*, the listeria claims, arising throughout the successive coverage periods of both insurers. Accordingly, I also find that Continental's actions in providing a complete defense to Pepper were proper and that Continental is entitled to equitable contribution from Colony.

### b.    Allocation of Defense Costs

Having found that Continental is entitled to equitable contribution, the parties disagree as to how reimbursement should be allocated. The appropriate method of allocation can be based on a variety of methods including, but not limited to, equal shares or based on policy limits. *D.R. Horton, Inc.-Denver*, 2012 WL 5363370, at *11. "In certain cases it might be appropriate to allocate defense fees and costs based on respective underlying liability, for example, in cases in which the judgment clearly indicates the extent to which each party in the underlying litigation was found liable." *Id.*

Here, there was a settlement in the Claim Resolution Process where claims occurred throughout the successive policy periods of both Continental and Colony. In

all, Continental contributed $1.35 million towards its defense of Pepper in the Claim Resolution Process; $1.3 million towards defense costs and $50,000 towards administrative costs.

As to the allocation, Continental argues that because it and Colony had identical policies, the court should utilize an equal shares method and require Colony to reimburse Continental for 50 percent of its costs. This equates to $650,000.00 towards defense costs and $25,000 towards administrative costs. Continental further argues that it is entitled to 50 percent reimbursement for the $34,470.38 it paid to John Grund in attorney fees for the defense of Pepper. Finally, Continental argues that Colony's inequitable conduct precludes it from requesting a different or more favorable method of apportionment.

Colony, however, asserts that it should only be required to reimburse its proportional share of Continental's $1.3 million in defense costs, which Colony estimates to be one-third. This equates to $433,333.33 when rounded to the nearest hundredth. Colony also states that it disputes Continental's expert's argument that Continental's proportional share was 63 percent (or $819,000 of the $1.3 million settlement) and that Colony's proportional share was 37 percent (or $481,000 of the $1.3 million settlement). ECF Nos. 23-1, p. 45; 23-29, p. 4. Further, Colony states that there is no documentation or evidence supporting what was actually paid to John Grund in attorney fees for the defense of Pepper. In response to Colony's attorney fees argument, Continental submitted an affidavit affirming that it paid John Grund $34,470.38 for the defense of Pepper.

As to this issue, I am persuaded by Colony's argument to the extent that it should

only be required to reimburse its proportional share. However, whether that amount is one-third, as Colony argues, or 37 percent, as Continental's expert calculated, remains unclear. Therefore, the parties shall brief their respective positions on this issue so that Colony's proportional share can be accurately determined.[2] Likewise, I find that applying Colony's proportional share to Continental's administrative costs and John Grund's attorney fees for the defense of Pepper is appropriate. Finally, I find that pre-judgment interest should be awarded on the sums found to be due to Continental from Colony, running from a date to be determined by further briefing.

## III.    CONCLUSION

After careful consideration of the matter before me, I find that there are no genuine issues of material fact regarding Colony's breach of its duty to defend and Continental's right to equitable contribution. Continental is, therefore, entitled to judgment as a matter of law on those two claims. Accordingly, it is

ORDERED that Continental's Motion for Summary Judgment (ECF No. 21) is **GRANTED IN PART** to the extent that Colony breached its duty to defend Pepper and that Continental is entitled to equitable contribution from Colony towards Continental's defense costs, administrative costs, and John Grund's attorney fees in relation to the

---

[2] In addition to the proofs of claims forms, I note that Plaintiff's Response to Defendant Colony Insurance Company's First Set of Interrogatories, Document Requests, and Requests for Admission to Plaintiff (ECF No. 21-31, pp. 4-17) may be helpful in resolving this issue. In this document, Continental identified each claimant who submitted a proofs of claim form against Pepper, as well as the consumption date, illness onset date, hospitalization date, and whether contribution was sought. However, regarding claimants Baldwin and Nunez, Colony states that the dates reflected in this document incorrectly indicate that their injuries occurred during Colony's coverage period. Colony further states that this information conflicts with the information provided by these two claimants in their proofs of claim forms.

Claim Resolution Process with pre-judgment interest.   Continental's Motion for Summary Judgment is also **DENIED IN PART** as it relates to the amount of Colony's proportionate share of cost reimbursement to be paid to Continental.   It is

FURTHER ORDERED that Colony's Cross Motion for Summary Judgment (ECF No. 23) is **DENIED WITH PREJUDICE** as it relates to liability and **DENIED WITHOUT PREJUDICE** as it relates to the amount of Colony's proportionate share of cost reimbursement to be paid to Continental.   It is

FURTHER ORDERED that the parties shall simultaneously submit briefs not later than **Friday, October 3, 2014,** solely addressing the amount of Colony's proportionate share of cost reimbursement to be paid to Continental and the onset date of pre-judgment interest.

Dated:   September 19, 2014.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE